UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| THE KANSAS CITY SOUTHERN RAILWAY COMPANY | CIVIL ACTION: No. 11-724 |
| VERSUS | JUDGE DONALD E. WALTER |
| FRANK L. STODDART, ENERGY TRANSPORTATION, INC., ILLINOIS NATIONAL INSURANCE COMPANY, CHARTIS INC., AND CHARTIS INSURANCE AGENCY, INC. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment on Liability filed on behalf of Plaintiff, the Kansas City Southern Railway Company ("KCS") [Doc. #58]. Defendants Frank Stoddart ("Stoddart"), Energy Transportation, Inc. ("ETI"), and Illinois National Insurance Company (collectively, "Defendants") filed a memorandum in opposition to Plaintiff's motion. [Doc. #60]. Plaintiff was then granted leave of court to file a Reply Memorandum to Defendant's Brief in Opposition. [Doc. #64]. Upon due consideration, after reviewing the parties' briefs and the record, and for the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment on Liability [Doc. #58] is hereby **GRANTED IN PART** and **RESERVED IN PART**.

### I. BACKGROUND

The parties in this matter are familiar with the facts of this case, and very few facts are disputed. Accordingly, only a brief recapitulation of the background information is necessary.

This case involves a collision between a train operated by Plaintiff KCS and a tractor-trailer

owned by ETI and operated by Stoddart on August 4, 2012. While transporting a compressor from Wyoming to Alabama, Stoddart hauled the oversized load through Louisiana pursuant to an overweight permit issued by the Louisiana Department of Transportation and Development ("DOTD"). The overweight permit provided the route Stoddart was to take while traveling through Louisiana, and included a hold harmless clause, which stated:

> The applicant agrees to defend, indemnify, and hold harmless the department and its duly appointed agents and employees from and against any and all claims, suits, liabilities, losses, damages, cost or expenses including attorney fees sustained by reason of the exercise of this permit, whether or not the same may have been caused by negligence of the department, its agents or employees.

The permit required Stoddart to travel with a Louisiana State Police escort, and ETI provided two additional escorts to travel with Stoddart.

Stoddart approached a railroad crossing that appeared to be "humped up" on Highway 9 near Arcadia, Louisiana shortly before 8:00 AM on August 4, 2010. After getting out of his rig to survey the crossing, Stoddart jacked up his trailer as high as he could and tried to navigate the crossing while one of the ETI escorts acted as a spotter.[1] When Stoddart attempted to cross the tracks, the trailer's extension bars wedged into the pavement, causing the truck to become stuck. Shortly thereafter, the railroad crossing gate came down and the KCS train came into view. Unable to stop in time, the train collided with ETI's truck, damaging the locomotive, the tracking, the lights, poles and a cross arm, and the adjacent Arcadia museum.

KCS filed this motion for partial summary judgment on the issue of liability, requesting a judgment that Defendants' negligence was the sole cause of the accident. In their brief in opposition,

---

[1] The spotter was tasked with walking behind the truck to ensure the trailer's extension bars did not hit the tracks. [Stoddart Deposition at 83–84, 171].

Defendants allege that there are disputes about facts relating to the liability of Defendants' liability, as well as the liability of the police escort, Trooper Kuba, and the DOTD.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical*

---

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

### III. LAW AND ANALYSIS

#### A. Trooper Kuba's Liability

Defendants assert that Trooper Kuba is partially liable for the accident based primarily on the DOTD's "Escort Requirements for Oversize And/Or Overweight Vehicles or Loads" (the "Requirements"). [Defendants Brief at 16]. Subparagraph 1.i of the Requirements states that "The driver of the escorting vehicle is responsible for the movement and shall ensure that the escorted vehicle is operated in a manner consistent with these provisions and all provisions on the permit." [Exhibit 1 to Defendants' Brief]. Because the driver of the escorting vehicle is "responsible for the movement," Defendants argue, it was Trooper Kuba's duty to contact the railroad, or at least ensure that Stoddart contacted the railroad before Stoddart attempted to cross the tracks. [Defendants' Brief

at 17].

As a threshold matter, the Court is doubtful that the DOTD promulgated these regulations as a means to orchestrate the conduct of State Police escorts.[3] Accordingly, the Requirements do not appear to place any specific legal duties on Trooper Kuba. Rather, the Requirements appear to squarely govern the responsibilities of the private escorts ETI hired. Second, the Court reads the phrase "responsible for the movement" to include a responsibility to ensure that the escorted vehicle follows the route indicated on the permit. It does not, as Defendants contend, include a responsibility to ensure that the each movement is compliant with Louisiana law. Finally, La. R.S. 32:174 provides a notice requirement only when the vehicle is a "crawler-type tractor, steam shovel, derrick, roller, or any equipment or structure having a normal operating speed of ten or less miles per hour or a vertical body or load clearance of less than one-half inch per foot of the distance between any two adjacent axles or in any event of less than nine inches, measured above the level

---

[3] For example, the Requirements state at the beginning that "Escort vehicles may be furnished by the permittee or by a private escort service, provided the following regulations are complied with." Subsection 2.a states that the "escort vehicle shall display an approved 360 degree 'Emergency Warning Lamp.'...The warning lamp shall be amber in color." Finally, subsection 1.j states that "It shall be the responsibility fo the driver of the escort vehicle to operate as a warning vehicle only...His authorization to warn motorists of danger shall not imply that the vehicle is or should be used as a police and/or emergency vehicle." It is undisputed that Trooper Kuba was driving his State Trooper vehicle. [Deposition of Kuba at 27]. It would be impossible for a State Police Escort driving his patrol car to prevent his authorization to warn motorists from implying that his patrol unit is a police vehicle.
Trooper Kuba's deposition testimony corroborates the conclusion that the Requirements appear to govern private escorts rather than State Police escorts. During the deposition, Defense Counsel asked Trooper Kuba if he was "familiar with the fact that the Louisiana Department of Transportation has published rules for escorts under overweight permits." Trooper Kuba responded, "Civilian escorts or state police escorts?" [Deposition of Kuba at 34]. Without evidence suggesting that the Requirements offered by Defendants applies to State Police escorts, the Court is unwilling to impose a duty on Trooper Kuba to ensure that Stoddart complies with every statutory regulation related to oversized loads.

5

surface of a roadway." Stoddart testified that he made sure Trooper Kuba had a copy of the permit when they first met, but he does not state that he provided any specifications about the specific trailer that was being used, or any other information regarding the load clearance. [Deposition of Stoddart at 66]. The permit itself does not reflect this information. [Exhibit A to Plaintiff's Brief]. Therefore, Trooper Kuba had no way of knowing whether the notice requirement in La. R.S. § 32:174 applied.

Defendants support their argument regarding Trooper Kuba is liable by citing to two cases involving police-escorted funeral processions. [Defendant's Brief at 18]. The two cases essentially hold that a police officer escorting a funeral precession must do so in a non-negligent manner. *Batiste v. Farm Bureau*, 2007-1586 (La. App. 3 Cir. 5/7/08), 982 So. 2d 975, 978; *LeJeune v. Allstate Ins. Co.*, 365 So. 2d 471, 475 (La. 1978). A police officer leading a funeral procession owes a duty to ensure that the funeral procession safely passes through intersections on its way to the cemetery. *LeJeune*, 365 So. 2d at 475. The Louisiana Supreme Court's holding in *LeJeune* does not, however, support a finding that Trooper Kuba owed a duty to ensure that Stoddart complied with the minutia of the Louisiana Highway Regulatory Act. Unlike funeral goers who might need a safety escort due to grief-impaired driving abilities, Stoddart needed no assistance in order to comply with the rules of the road. Stoddart was an "experienced heavy haul truck driver." [Defendants' Brief at 6]. Therefore Stoddart, not Trooper Kuba, owed a duty to make ensure DOTD regulations were complied with.

Because he did not owe a duty to make sure the truck did not get stuck on the railroad tracks, the Court finds that Trooper Kuba was not at fault in the August 4, 2010 collision.

## B. DOTD's Liability

Defendants contend that the DOTD is partially liable for the collision because it was negligent in issuing the overweight permit. According to Defendants, the DOTD was negligent in issuing the permit because the DOTD should have known that the truck would get stuck on the train tracks. Defendants note that the DOTD "chose the route mindful of the height, weight, and width of Stoddart's vehicle." [Defendants' Brief at 7]. According to Defendants' expert, Tremayne Thomas, "the combination of the roadway geometry and vehicle dimensions made it impossible for Stoddart's vehicle to safely traverse the southbound grade crossing at the location of the accident." [Defendants' Brief at 14].

It is clear from the overweight permit that the DOTD had access to the height, width, and length of the load, as well as the number of axles on the trailer and other information. [Exhibit A to Plaintiff's Brief]. Defendants have not shown, however, that the DOTD had access to specifications regarding the trailer's clearance.[4] Without this information, it is impossible to understand how the DOTD should have known that the trailer would be unable to traverse the railroad crossing. Defendants have not demonstrated, and apparently cannot demonstrate, that the DOTD should have known that the trailer did not have sufficient clearance to navigate the route chosen by the DOTD. Accordingly, the Court finds that the Defendant cannot prove that the DOTD was negligent in issuing the overweight permit.

Defendants also argue that the DOTD was negligent in maintaining the roadway leading to

---

[4] During the pretrial conference held on December 28, 2012, Counsel for Defendants represented to the Court that every piece of paper relating to the overweight permit was turned over to the Plaintiffs during discovery, and that there is no additional documentary evidence that would demonstrate the extent to which the DOTD was aware of the trailer's specifications. Furthermore, Counsel conceded that no information relating to the trailer's clearance was provided to the DOTD.

the railroad crossing. [Defendants' Brief at 13]. "A governing authority with jurisdiction over a particular roadway has a legal duty to make that highway reasonably safe for travel." *Fry v. S. Pac. Transp. Co.*, 30,540 (La. App. 2 Cir. 6/24/98), 715 So. 2d 632, 635 To establish DOTD's liability, Defendants must show that "[1] the roadway was unreasonably dangerous, [2] that the state had knowledge of the condition yet failed to exercise a reasonable chance to remedy that condition, and [3] that the unreasonably dangerous condition caused the accident." *Id.* (citing *Dowden v. Carr*, 27,995 (La. App. 2 Cir. 2/29/98), 669 So. 2d 707).

Defendants present the unsworn declaration of Tremayne Thomas, a purported expert in accident reconstruction, to demonstrate that "the grade, cross slope, and track structure may have been in compliance with standards which were applicable when the roadway was constructed in the 1930's, [but] the profile of the roadway does not meet current design standards ...." [Unsworn Declaration of Tremayne L. Thomas, ¶15]. Therefore, a "Low Ground Clearance Grade Crossing" sign should have been posted at the crossing. [Unsworn Declaration of Tremayne L. Thomas, ¶15]. Thus, Defendants argue, the railway crossing at issue was unreasonably dangerous. Defendants then note that Stoddart testified that he would have contacted the State before crossing the railroad line about changing the designated route if the warning sign had been there. [Defendant's Brief at 13–14]. Even assuming Defendants have submitted sufficient evidence to avoid summary judgment with regards to the first and third elements of the *Fry* analysis, Defendants have submitted no evidence showing that the DOTD had knowledge of the alleged unreasonably dangerous condition. Therefore, Defendants' claim that the DOTD is liable on the grounds that the railway crossing was unreasonably dangerous must fail.

The Court finds that Defendants are unable to demonstrate that the DOTD was negligent in

issuing the overweight permit because DOTD did not have information relating to the trailer's clearance. Additionally, Defendants have failed to point to evidence showing that the DOTD was aware that the railway crossing at issue was unreasonably dangerous and are thereby unable to satisfy the *Fry* standard. Thus, the Court finds that the DOTD is not at fault for the collision on August 4, 2010.

### C. The Named Defendants' Liability

The issue of Defendants' liability is REFERRED TO THE MERITS.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment [Doc. #58] is **GRANTED IN PART** and **RESERVED IN PART**. The Court finds that Trooper Kuba and the DOTD are not at fault for the collision. The issue of Defendant's liability is REFERRED TO THE MERITS.

**THUS DONE AND SIGNED**, Shreveport, Louisiana, this 3 day of January, 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE